UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
NO. 5:11-CR-103-BR

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| v. | ) | ORDER |
| | ) | |
| SAMUEL THIGPEN | ) | |

This matter is before the court on defendant's motion to dismiss the indictment on the ground that the indictment represents a second prosecution for a criminal offense, in violation of the Double Jeopardy Clause of the Constitution. The government has filed a response in opposition to the motion.

On 18 February 2011, defendant, who was an inmate at the Federal Correctional Institution in Butner ("FCI"), was found to be in possession of a homemade weapon, a violation of prison regulations. Defendant was immediately placed in administrative detention in FCI's Special Housing Unit ("SHU") pending a disciplinary hearing and pursuant to 28 C.F.R. § 541.22(a) (2010). The first part of that hearing was held on 3 March 2011,[1] and it was completed on 1 April 2011. (DE # 27 at 1–2). A Disciplinary Hearing Officer ("DHO") determined that defendant committed the prohibited act of possessing a weapon and implemented the following "sanctions": (1) disallowance of 40 days good conduct time; (2) forfeiture of 40 days non-vested good conduct time; (3) disciplinary segregation for 30 days ; and (4) the execution of a previously-suspended 45-day disciplinary segregation sanction.[2] (DE

---

[1] The government states that the hearing commenced 10 March 2011. (DE # 28 at 2). The difference in dates is irrelevant for purposes of the instant motion.

[2] The forty-five day sanction had been suspended on 26 October 2010 and was reinstated after the DHO concluded that the defendant had failed to "maintain[ ] a period of clear conduct for 180 days." (DE # 28 at 3).

# 27 at 2; DE # 28 at 3). On 19 April 2011, a federal grand jury returned a single-count indictment charging defendant with the violation of 18 U.S.C. § 1791(a)(2) and (b)(3) by knowingly possessing a weapon and object that is designed and intended to be used as a weapon while being an inmate in a federal prison.

Defendant contends that the administrative detention, disciplinary segregation, and loss of accrued good time imposed by the DHO constitutes criminal punishment, and allowing the indictment to proceed against him would be a second prosecution for the same offense, violating the Double Jeopardy Clause. Defendant's assertion finds no support in the law. In Patterson v. United States, the Fourth Circuit Court of Appeals held that "[c]riminal prosecution for [a] crime . . . is not prohibited under the double jeopardy clause of the fifth amendment because a convict guilty thereof has . . . been subjected to discipline by the prison authorities for the violation of prison discipline involved." 183 F.2d 327, 328 (4th Cir. 1950) (per curiam) (citing Pagliaro v. Cox, 143 F.2d 900, 901 (8th Cir. (1944)). Other circuit courts agree. See United States v. Simpson, 546 F.3d 394, 398 (6th Cir. 2008) (per curiam) ("Every circuit court of appeals to consider this question has given the same answer: The Double Jeopardy Clause was not intended to inhibit prison discipline, and disciplinary changes in prison conditions do not preclude subsequent criminal punishment for the same misconduct.") (citing Porter v. Coughlin, 421 F.3d 141, 145, 148 (2d Cir. 2005); United States v. Mayes, 158 F.3d 1215, 1224 (11th Cir. 1998); United States v. Galan, 82 F.3d 639, 640 (5th Cir. 1996); Garrity v. Fiedler, 41 F.3d 1150, 1152 (7th Cir. 1994); Lucero v. Gunter, 17 F.3d 1347, 1351 (10th Cir. 1994); United States v. Newby, 11 F.3d 1143, 1146 (3d Cir. 1993); Kerns v. Parratt, 672 F.2d 690, 691-92 (8th Cir. 1982)). See also United States v. DeVaughn, 32 Fed. Appx. 60, 61 (4th Cir. 2002); United States v. Ezzat,

No. 5:10-CR-280-FL (E.D.N.C. July 7, 2011) (memorandum and recommendation), adopted (E.D.N.C. Aug. 3, 2011).

Despite this consistent view of prison sanctions as being civil in nature, defendant asserts that the Supreme Court's ruling in Hudson v. United States, 522 U.S. 93 (1997), requires the court to analyze the statutory scheme to determine whether it is so punitive that it represents truly criminal punishment. In making this determination, the Court instructs that the following factors are "useful guideposts": "(1) 'whether the sanction involves an affirmative disability or restraint'; (2) 'whether it has historically been regarded as punishment'; (3) 'whether it comes into play only on a finding of *scienter*'; (4) 'whether its operation will promote the traditional aims of punishment – retribution and deterrence'; (5) whether the behavior to which it applies is already a crime'; (6) 'whether an alternative purpose to which it may rationally be connected is assignable for it'; and (7) 'whether it appears excessive in relation to the alternative purpose assigned.'" Id. at 99–100 (quoting Kennedy v. Mendoza-Martinez, 372 U.S. 144, 168–69 (1963)). A look at defendant's sanctions through each of these factors undercuts his assertion.[3]

While isolation from the general prison population does involve an affirmative disability or restraint, the record is devoid of any facts indicating that he was further deprived of "the same general privileges given to inmates in the general population" as required by 28 C.F.R. § 541.22(d) (2010). Nor has placement in segregation historically been regarded as punishment, as evidenced by its use for, *inter alia*, an inmate's voluntary admission for his own protection. See id. § 541.22(a). As evidenced by the multiple purposes of administrative segregation, its use

---

[3]In Hudson, the Court echoed Kennedy's establishing that "no one factor should be considered controlling as they 'may often point in differing directions.'" Hudson, 522 U.S. at 101 (quoting Kennedy, 372 U.S. at 169). Therefore, no factor is dispositive.

3

does not come into play only on a finding of *scienter,* nor does its operation promote only the traditional aims of punishment. While defendant was placed in segregation for an act that was independently a separate crime, criminal activity is not the only trigger for segregation's use, nor is punishment the only activity rationally associated with placement in segregation. See id.

Additionally, defendant suggests that "months of solitary confinement is well in excess of the time needed to search areas where an offender may have placed other contraband," apparently indicating that the defendant considers the entirety of his 139 days in "solitary confinement" as punishment for his acts. (DE # 27 at 5). However, defendant's being placed in administrative detention from the day the shank was discovered up to his final DHO hearing was pursuant to his status both as an inmate "pending a hearing for a violation of Bureau regulations" as well as his status as an inmate "pending an investigation of a violation of Bureau regulations." 28 C.F.R. § 541.22(a) (2010). As established earlier, either status was intended to be civil in nature and is not part of any purported punishment doled out by the prison. The remainder of defendant's ninety-seven days stem from two separate incidents – the thirty days for possession of the shank, and the forty-five days from the previously suspended sanction. Each block of time is distinctly accounted for, and the court declines to view them as a lump sum "punishment."

In the face of overwhelming contradictory authority, the court concludes that, under the circumstances here, defendant's indictment for knowing possession of a weapon while an inmate of a federal prison does not cause defendant to be subjected to criminal prosecution for the same offense twice.

Defendant's motion to dismiss is DENIED.

This 26 October 2011.

                                        W. Earl Britt
                                        Senior U.S. District Judge